**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| IN RE: | NO. 03-16518, SECTION A |
| MICHAEL L. JONES<br>DEBTOR | CHAPTER 13 |
| MICHAEL L. JONES<br>PLAINTIFF | ADVERSARY PROCEEDING |
| | CASE NO. 06-01093 |
| VERSUS | |
| WELLS FARGO HOME MORTGAGE<br>DEFENDANT | |

**SUPPLEMENTAL MEMORANDUM OPINION**

A trial on the merits was conducted on January 5, 2007. At the conclusion of the trial, the parties requested and were granted time to file post-trial briefs, after which the Court took the matter under advisement.

On April 13, 2007, this Court rendered a partial judgment on the merits of the Complaint ("Partial Judgment"). In the Partial Judgment, the Court reserved for later determination, the claims of Michael L. Jones ("Debtor") against Wells Fargo Home Mortgage ("Wells Fargo") seeking damages and sanctions.[1] The Court directed Debtor's counsel to submit, prior to the hearing on Debtor's request for sanctions and damages, an affidavit of legal fees and costs incurred in connection with the proceeding. Counsel were given the opportunity to brief the issues, and a hearing on Debtor's request for sanctions and damages was held on May 29, 2007.

On May 10, 2007, Wells Fargo filed a Notice of Appeal of the Partial Judgment ("Notice of Appeal").

---

[1] April 13, 2007, Judgment (P-68) and Memorandum Opinion (P-69).

1

Subject Matter Jurisdiction

Debtor's request for sanctions and damages is based on allegations, which this Court has previously found to be true, of Wells Fargo's willful violation of the automatic stay[2] and the confirmation order entered in this case. Wells Fargo begins its defense by averring that subject matter jurisdiction is lacking as a result of its appeal of the Partial Judgment.

At the trial on the merits, both parties requested that the presentation of evidence on the amount of damages incurred or the availability of sanctions be deferred. The Court granted the request, severing for later determination the appropriateness of assessing sanctions and awarding damages.[3] Upon finding that a violation of the automatic stay had occurred, the Partial Judgment directed Debtor to file an affidavit itemizing all fees and costs incurred in connection with the stay violation. The Partial Judgment also set forth a schedule for additional briefing on the issue and set an evidentiary hearing.

Prior to the final hearing on this matter, Wells Fargo filed its Notice of Appeal. Upon the filing of the Notice of Appeal, Debtor filed a Motion for Sanctions,[4] separate and apart from the request already pending in its Complaint. Both were heard on May 29, 2007.[5]

---

[2] Imposed pursuant to 11 U.S.C. § 362.

[3] Trial Transcript, January 5, 2007. 127:3-128:6.

[4] Filed April 25, 2007 (P-77).

[5] The original hearing was continued at the request of Wells Fargo in order to accommodate the availability of witnesses. This Supplemental Memorandum Opinion was further delayed at the request of the parties while settlement negotiations were explored. Having tried unsuccessfully to amicably resolve their differences, the parties informed the Court that a judicial decision would be required.

In response to the Motion for Sanctions, as well as in its memorandum on the severed issues, Wells Fargo avers that the Notice of Appeal deprives this Court of subject matter jurisdiction over any determination as to the amount of damages or sanctions available.[6]

The Bankruptcy Code requires the entry of a final judgment before an appeal may be lodged unless the district court grants leave to appeal an interlocutory order.[7] In *In re Morrell*, 880 F.2d 855 (5th Cir. 1989), the Fifth Circuit held that a civil contempt order is not "final" for purposes of appeal unless two actions occur: (1) a finding of contempt is issued, and (2) an appropriate sanction is imposed.[8]

> Determinations of liability without an assessment of damages are as likely to cause duplicative litigation in bankruptcy as they are in civil litigation, and because bankruptcy litigants may appeal to district as well as to appellate courts, the waste of judicial resources is likely to be greater. The rule for appeals from bankruptcy decisions determining liability but not damages under 28 U.S.C. §158(d) must...be the same as the rule under [28 U.S.C.] §1291. *Morrell*, at 856-57.

The holding was further solidified by *In the Matter of United States Abatement Corporation,* 39 F.3d 563 (5th Cir. 1994). The facts of *Abatement* are almost directly on point. *Abatement* involved a claim against a creditor for a stay violation. After finding that the creditor's conduct violated the automatic stay, the Court ordered the debtor to file an itemization of damages, but conditioned further hearing on request of any party. The creditor filed a motion for reconsideration, followed by a notice of appeal. Thereafter, the Court granted the creditor's motion for

---

[6] Trial Transcript, May 29, 2007, 18:3-21.

[7] 28 U.S.C. §158(a); *In re Moody*, 817 F.2d 365, 366 (5th Cir. 1987); *Matter of U.S. Abatement Corp.*, 39 F.3d 563, 566 (5th Cir. 1994).

[8] *In re Morrell*, 880 F.2d 855, 856-57 (5th Cir. 1989); *Abatement,* F.3d at 567.

3

reconsideration and vacated its previous order of contempt. The debtor appealed the vacation of the contempt order, but the district court affirmed the decision. On appeal to the Fifth Circuit, the debtor argued that the bankruptcy court lacked subject matter jurisdiction to reconsider its order of contempt because the notice of appeal of the order was already on file. In recognizing the jurisdiction of the bankruptcy court, the Fifth Circuit noted that the order of contempt required the debtor to file an itemization of damages incurred as a result of the stay violation. It also contemplated a further hearing on damages on request of any party. As such, the order was not final as it clearly contemplated an assessment of damages in the future. Without an assessment of damages, the contempt order was merely interlocutory.[9]

The facts of this case fall squarely within the parameters of the *Morrell* and *Abatement* decisions. As such, subject matter jurisdiction continues to exist with this Court despite Wells Fargo's filing of the Notice of Appeal.

In addition to Debtor's request for sanctions and damages, Wells Fargo's willful violation of the automatic stay and the confirmation order entered in this case entitles this Court to, *sua sponte*, impose sanctions for civil contempt. Section 105(a) provides:

> The court may issue any order...or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

A bankruptcy court has the inherent authority to enforce its own orders.[10]

---

[9] *Abatement* 39 F.3d at 567.

[10] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *In re Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609, 613 (5th Cir. 1997); and *In re Hipp, Inc.*, 895 F.2d 1503, 1516 (5th Cir. 1990).

The bankruptcy court has exclusive jurisdiction over all property of the estate wherever located.[11] Upon the filing of the case, all actions to collect, enforce, or possess property of the estate are automatically enjoined.[12] Proceedings to prosecute violations of the automatic stay are core proceedings.[13] A proceeding to enforce the automatic stay by means of civil contempt is a "core proceeding" within the meaning of 28 U.S.C.A. §157 and within the scope of the bankruptcy court's powers.[14]

An order of confirmation defines the rights of the debtor and interested parties to payment post-confirmation. The provisions of a confirmed plan bind the debtor and each creditor to its terms.[15] The creditor is not entitled to collect or enforce its claims except as provided by the plan and the confirmation order. The automatic stay operates to protect property of the estate from the collection efforts on claims until the debtor is discharged or the case is dismissed.[16]

Thus, whether jurisdiction over Debtor's request for sanctions and damages was reserved or this Court, *sua sponte,* exercised its inherent powers to enforce its own orders and protect property of the estate, subject matter jurisdiction exists.

---

[11] 28 U.S.C. §§1334(e) and 157(a).

[12] 11 U.S.C. §362(c)(1) and (2).

[13] *In re Hamrick,* 175 B.R. 890 (Bankr. W.D.N.C. 1994); *Divane v. A and C Elec. Co., Inc.,* 193 B.R. 856 (Bankr. N.D. Ill. 1996).

[14] 11 U.S.C. §105(a); *Better Homes of Virginia, Inc. v. Budget Service Co.,* 52 B.R. 426 (Bankr. E.D.Va. 1985) *aff'd,* 804 F.2d 289 (4th Cir. 1986).

[15] 11 U.S.C. §1327(a).

[16] *See, e.g., In re Chesnut*, 422 F.3d 298, 301 (5th Cir. 2005).

Civil Sanctions Under Section 105 and Damages Under Section 362

A.  Relief Available

The authority of bankruptcy courts to issue civil sanctions has been clearly settled.[17] The source of that authority comes from the Bankruptcy Code itself, specifically section 105.[18] The authority is not limitless, however. The purpose of civil sanctions, whether monetary or nonmonetary, is to prevent an abuse of the bankruptcy process.[19]

Sanctions may include the imposition of a monetary fine, reimbursement of fees and costs to debtors' counsel, punitive damages, and other relief as the court may direct in order to enforce its orders. Nevertheless, sanctions are not designed to compensate aggrieved parties for damages sustained as a result of wrongful conduct. Nor are they a substitute for legal proceedings between litigants on the merits of their complaints.[20] While a monetary sanction may be imposed by the court, and payment can be directed to a third party, the nature of a monetary sanction is a fine or penalty.

Conversely, section 362(k) allows for the award of actual damages as a result of a stay violation. It is designed to compensate an injured party for losses sustained as a result of the defendant's conduct. In appropriate circumstances, courts may also award punitive damages.

---

[17] *Matter of Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609 (5th Cir. 1997); *see also, In re Hardy*, 97 F.3d 1384 (11th Cir. 1996); *In re Rainbow Magazine, Inc.*, 77 F.3d 278 (9th Cir. 1996); *In re Power Recovery Systems, Inc.*, 950 F.2d 798 (1st Cir. 1991); *In re Skinner*, 917 F.2d 444 (10th Cir. 1990); *In re Walters*, 868 F.2d 665 (4th Cir. 1989); and *In re Sanchez*, –B.R.–, 2007 WL 2137790 (Bankr. S.D.Tex. 2007).

[18] *Terrebonne,* 108 F.3d at 613.

[19] *Terrebonne, supra; Port Drum Co. v. Umphrey*, 852 F.2d 148 (5th Cir. 1988).

[20] *Elliott v. The M/V Lois B.,* 980 F.2d 1001 (5th Cir. 1993); *Port Drum, supra; Business Guides Inc., v. Chromatic Communications Enterprises, Inc.,* 121 F.R.D. 402 (N.D.Cal. 1988), *rev'd on other grounds*, *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 892 F.2d 802 (9th Cir. 1978).

This Court has found that Wells Fargo violated the Court's order of confirmation and the statutory provisions of the Bankruptcy Code which create the automatic stay. For the reasons set forth in its previous Memorandum Opinion, both an award for damages and sanctions will be imposed against Wells Fargo for these violations.

B. Attorney's Fees and Costs

A sanction award requiring the reimbursement of a debtor's costs and attorney's fees by a party whose conduct is sanctionable is generally discretionary. However, some courts have held that compensation for the costs associated with a willful violation of the automatic stay, including attorney's fees, are mandatory under section 362(k).[21] In either case, courts maintain a great deal of discretion in reviewing and determining the appropriate amount of attorney's fees.[22]

The review begins with an examination of counsel's fee statements and the factors set out in *Johnson v. Georgia Highway Express, Inc.*[23] The relevant *Johnson* factors include a review of the time and labor incurred, the nature and complexity of the issues presented, the rate charged in relation to customary rates in the community, the experience and expertise of counsel, the extent to which the case precluded other employment, and the results obtained.

The time-sheets submitted by Debtor's counsel indicate that 350.90 attorney hours were spent on the case between February 20, 2006, and April 25, 2007.[24] The Court finds that the time spent on

---

[21] 11 U.S.C. §362 (k)(1); *In re Freigo*, 149 B.R. 224 (Bankr. M.D. Fla. 1992); *In re Rameriz*, 183 B.R. 583 (9th Cir. BAP 1995).

[22] *U.S. Leather, Inc. v. H & W Partnership*, 60 F.3d 222, 229 (5th Cir. 1995)("[t]he court is limited in its discretion only by the considerations espoused in *Johnson*"), *see also, Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996).

[23] 488 F.2d 714, 717-19 (5th Cir. 1974).

[24] Pleading 75, filed April 25, 2007.

the case is high, but not unreasonably so. The rate charged by counsel, $175-200 per hour, is a customary rate for bankruptcy litigation. The issues involved were novel, difficult, complex, and ones of first impression in this district. As a result, the issues presented required a level of expertise in bankruptcy not generally possessed by those with general litigation skills. Although the issues were complex and the litigation of this matter was time consuming, there is no evidence before the Court to suggest that Debtor's counsel actually turned away clients due to the acceptance of this case. However, the Court notes that Debtor's counsel is a small firm, and Debtor's counsel did spend a considerable amount of time on the case.

Perhaps the most important factor concerns the results obtained. The Court entered a Partial Judgment in the amount of $16,852.01 for unreimbursed overcharges on Debtor's loan. While the amounts obtained are relatively small, particularly in relation to the fees generated, the importance of the issues settled by this litigation are significant and far reaching. The conduct of Wells Fargo is neither limited to this case nor unique to this lender. Therefore, this decision will have ramifications on many other cases pending in the district and perhaps beyond. This Court considers the litigation of this matter to have benefitted both debtors and lenders alike. It provides guidance in the post-petition administration of home mortgage loans to a degree that has heretofore been lacking. It will presumably streamline the process of review in the future for countless parties.

Debtor's counsel has submitted an affidavit of the fees and costs incurred by Debtor in connection with the representation of his interests in these proceedings. Wells Fargo has had the opportunity to submit memoranda on the subject, and the Court conducted a hearing on Debtor's request for reimbursement of fees. The Court finds that the fees and costs incurred by Debtor are high, but given the nature of the proceedings, the length of time and effort required to bring this

matter to trial, and the post-trial work required to address the substantive and procedural issues raised, not so high as to be unreasonable. Therefore, the Court will award $67,202.45 in sanctions against Wells Fargo, payable to Debtor in reimbursement for attorney's fees and costs incurred in connection with this matter.

C. Punitive Damages

The Court next turns its attention to Debtor's request for punitive damages.[25] Punitive damages are warranted when the conduct in question is willful and egregious,[26] or when the defendant acted "with actual knowledge that he was violating the federally protected right or with reckless disregard of whether he was doing so."[27] There is no question that Wells Fargo's conduct was willful. As previously decided, Wells Fargo clearly knew of Debtor's pending bankruptcy and was represented by bankruptcy counsel in this case. Wells Fargo is a sophisticated lender with thousands of claims in bankruptcy cases pending throughout the country and is familiar with the provisions of the Bankruptcy Code, particularly those regarding the automatic stay.

Wells Fargo assessed post-petition charges on a loan being paid through a plan of reorganization. However, it was not the assessment of the charges, but the conduct which followed that this Court finds sanctionable. Despite assessing post-petition charges, Wells Fargo withheld this fact from its borrower and diverted payments made by the Chapter 13 Trustee ("Trustee") and Debtor to satisfy claims not authorized by the plan or Court. Wells Fargo admitted that these actions were part of its normal course of conduct, practiced in perhaps thousands of cases. The Court finds this

---

[25] Section § 362(k)(1) provides for the recovery of punitive damages.

[26] *In re Ketelsen*, 880 F.2d 990, 993 (8th Cir. 1989).

[27] *In re Sanchez*, –B.R.–, 2007 WL 2137790, at * 18 (Bankr. S.D.Tex. 2007)(citations omitted).

conduct to be egregious, Sanctions are "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."[28]

The imposition of monetary sanctions to reimburse Debtor for costs and legal fees incurred will not, in this Court's opinion, deter Wells Fargo from future objectionable conduct. Wells Fargo is a national lender, listed on the New York Stock Exchange, with considerable financial resources. The imposition of a $67,202.45 damage award is *de minimus*, and insufficient to act as a deterrent to future misconduct.[29]

As an alternative to the imposition of punitive monetary damages, Wells Fargo has offered to revise its practices in connection with all loans administered in the Eastern District of Louisiana. In keeping with this Court's previous Memorandum Opinion, Wells Fargo has proposed:

> 1. Upon the filing of a chapter 13 bankruptcy petition, the amounts outstanding on a debtor's loan will be divided into two new, internal administrative accounts. The first account will contain the sums to be paid under debtor's plan by the Chapter 13 Trustee; typically the pre-petition past due amounts including past due interest, costs, charges, and fees ("Account One").[30] The opening balance on Account One should

---

[28] *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 2781, 49 L. Ed. 2d 747 (1976).

[29] The dollar amount of sanctions imposed against Wells Fargo in this case is considerably less than the $2,000,000 imposed against Wells Fargo's predecessor for similar conduct in *In re Slick*, Case No. 98-14378-MAM, Adv. No. 99-1136 (Bankr. S.D. Ala. May 10, 2002) (Text available at <www.alsb.uscourts.gov>). As Wells Fargo has continued with its sanctionable actions, it is apparent that even a multi-million dollar sanction is not enough of a sanction to act as a deterrent.

[30] Account One should not contain any estimated charges, for example, unpaid escrow charges on past due monthly installments. It should only contain actual deficiencies in payment. Wells Fargo may elect to carry a positive escrow balance existing on the petition date in Account Two rather than Account One in order to assist debtor's with the amortization of future property tax and insurance expenditures. If this practice is elected, it shall be noted on the proof of claim filed by Wells Fargo.

directly correlate to the amounts reflected on Wells Fargo's proof of claim. Account One will also include any amounts added by subsequent court order to the plan for payment by the Trustee during the case's administration. All payments made by the Trustee will be applied to the reduction of the amounts owed on Account One.

The second account will reflect the principal amount due on the petition date[31] ("Account Two"). No other sums should be owed on Account Two at the start of the case. Account Two will include post-petition interest accrual, post-petition property insurance or property tax expenditures, and other court authorized post-petition charges as provided in paragraph 2 below.[32] A debtor's regular monthly note payments will be posted to this account, reducing post-petition interest accrual, post-petition property and tax expenditures, and principal. The account's first posting will typically be the first installment payment due on the loan following the petition date.

Wells Fargo may maintain, post-petition, its customary records on the loan provided that the two new internal accounts shall control the loan's administration during the pendency of the case.

2. With the exception of post-petition property taxes and property insurance expenditures, Wells Fargo may provisionally accrue, but not assess or collect, any post-petition charges, fees, costs, etc.[33] allowed by the note, security agreement and state law. Post-petition property tax and insurance expenditures may be assessed against debtor's account and collected after the delivery of a ten day written notice to debtor, debtor's counsel, and the Trustee. The assessment and collection of expenditures for post-petition property inspections and taxes will not require approval of the bankruptcy court unless a written objection is filed within ten days of the notice of assessment and collection. If authorized by Wells Fargo's note, security agreement, and state law, the collection of amounts necessary to pay post-petition insurance and property tax expenditures may be made in advance through the use of escrow accounts. If escrows are utilized, Wells Fargo must give a written accounting of the amounts collected at the time it seeks to apply the escrowed funds

---

[31] Typically, proofs of claim include the entire installment payments that are past due. If this is done, the principal amount reflected in the second account must be adjusted downward to accommodate the anticipated principal payments being made through the plan in order to avoid a double payment. Alternatively, the past due installments reflected in the proof of claim can be adjusted to eliminate principal. If this opinion is chosen, disclosure as to how this will affect the future amortization of debtor's loan must be provided.

[32] The posting of post-petition charges is constrained by the provisions of paragraph 2 which follows.

[33] Court approved post-petition charges other than post-petition interest, property tax or insurance expenditures will hereafter be referred to as "Post-Petition Charges."

to payment of the insurance or property tax expenditures.

As to Post-Petition Charges, annually, between January 1 and February 28 of each year during a case's administration, Wells Fargo shall file with the Court and serve upon the debtor, debtor's counsel, and the Trustee, notice of any Post-Petition Charges (which do not include property taxes or insurance), accrued in the preceding calendar year. The notice shall contain an itemization describing the charge, amount provisionally incurred, the date incurred, and if relevant, the name of the third party to whom the charge was paid. The notice will also provide a direct reference to the provisions of the note, security agreement, or state law under which Wells Fargo asserts its authority to assess each type of charge.

The notice shall also state that debtors, the Trustee, and any other interested party, shall have 30 days within which to object to any or all assessments outlined in the notice. It shall contain a statement to the effect that debtor may elect to add the charges to his plan with approval of the bankruptcy court, satisfy the charges directly outside the plan, or defer repayment until the conclusion of his case.

If no objection to the amounts provisionally assessed is filed, or if filed, upon entry of an order approving some amount of the provisional charges, Wells Fargo may submit a proposed *ex parte* order authorizing assessment of the Post-Petition Charges as set forth in its notice or as approved by the court, as applicable. However, Wells Fargo may not collect on any approved Post-Petition Charges unless the debtor voluntarily delivers payment separate and above from that due as a regular monthly installment or obtains approval of the court to modify the plan and satisfy the amounts due through periodic payments by the Trustee. If the approved Post-Petition Charges are to be paid through the modified plan, they will be added to Account One and satisfied by the Trustee. If to be paid by the debtor, they may be added to Account Two.

If no provision for payment is made by a debtor, the collection of the approved Post-Petition Charges must be deferred until the close of the case or relief from the stay is obtained.

3. If Wells Fargo does not issue a notice of Post-Petition Charges, in accordance with paragraph 2, for any given year of the case's administration, then Wells Fargo shall be prohibited from collecting or assessing any charges accrued against the debtor for that year and shall treat the debtor as fully current at the time of discharge.

4. Upon the issuance of a discharge, Wells Fargo shall adjust its permanent records to reflect the current nature of debtor's account. Provided however, that if debtor elected to defer the payment of approved Post-Petition Charges until the conclusion of the case's administration, then Wells Fargo shall be authorized to

      collect said sums in accordance with the provisions of its note, security instrument, and state law.[34]

Wells Fargo also offered to memorialize this agreement into an order of the Court, enforceable in any case pending or subsequently filed before any court in the country.[35]

      The imposition of punitive awards are designed to discourage future misconduct and benefit society at large.[36] The imposition of a large monetary fine may have a deterrent effect on Wells Fargo's future dealings with this and other courts, however, more often than not, punitive damages serve to enrich the immediate plaintiff with no guarantee that society will benefit. The Court believes it to be more productive and effective to accept Wells Fargo's offer to modify its practices. The imposition of a fine or penalty may be the only means of deterring a recalcitrant litigant, but the Court is convinced that it has secured Wells Fargo's attention and that its offer to amend its practices is real.[37] As further assurance that Wells Fargo will implement the changes it has offered, the required changes will be implemented through the mechanism of a court order. This will allow this Court to monitor Wells Fargo's practices and supply the means to address any future violations. Through the Order that accompanies this Opinion, the goals of a punitive award will be realized, or if not, the

---

[34] This is the Court's interpretation of Wells Fargo's offer, and not a verbatim quote of the offer.

[35] Trial Transcript, May 29, 2007. 89:13-17.

[36] *See, City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-67, 101 S.Ct. 2748, 2759, 69 L.Ed.2d 616 (1981)("[punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct."); Restatement (Second) of Torts § 908, cmt. b (1979) ("the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence").

[37] National counsel for Wells Fargo, Hilary Bonial, and Kim Miller, a Vice President at Wells Fargo, appeared at the hearing on this issue and pledged to immediately implement the accounting procedures outlined above should the Court accept Wells Fargo's offer.

means to enforce those goals will be created.

The Supreme Court, in *Pacific Mutual Life Ins. Co. v. Haslip*, ruled that punitive damages awards must address both reasonableness and adequate guidance concerns to satisfy the Fourteenth Amendment's due process clause.[38] The Fifth Circuit developed a two part test to help courts determine whether the requirements set forth under *Haslip* are met: "(1) whether the circumstances of the case indicate that the award is reasonable; and (2) whether the procedure used in assessing and reviewing the award imposes a sufficiently definite and meaningful constraint on the discretion of the factfinder."[39]

The first prong, reasonableness of the award, may be determined by considering two factors: "(1) the reprehensible nature of the conduct, and (2) a significant societal interest in preventing similar conduct."[40] As explained in the Court's Memorandum Opinion entered in this case,[41] Wells Fargo's actions are reprehensible and effectively seek to undermine the operation of this Court. Additionally, this Court finds that there is a significant societal interest in preventing similar conduct for a number of reasons. First, Wells Fargo's actions are not limited to this case.[42] Furthermore, the

---

[38] 499 U.S. 1, 17, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).

[39] *Eichenseer v. Reserve Life Ins. Co.*, 934 F.2d 1377, 1981 (5th Cir. 1991).

[40] *Id., see also, In re Sanchez*, –B.R.–, 2007 WL 2137790, at * 19 (Bankr. S.D.Tex. 2007).

[41] *In re Jones*, 366 B.R. 584, 602-03 (Bankr. E.D.La. 2007).

[42] *See, In re Padilla*, 2007 WL 2264714 (Bankr. S.D.Tex. 2007)(Wells Fargo and Novastar Mortgage, Inc.); *In re Riser*, 289 B.R. 201 (Bankr. M.D.Fla. 2003); and *In re Slick*, Case No. 98-14378-MAM, Adv. No. 99-1136 (Bankr. S.D. Ala. May 10, 2002) (Text available at <www.alsb.uscourts.gov>).

problems appear to be common in the mortgage servicing industry.[43] Based upon the prevalence and seriousness of Wells Fargo's actions, the Court finds that the award in this case is very reasonable.

The second prong, procedural safeguards, exists to ensure that "there is some meaningful procedural assurance that the amount of the award is not an impulsive reaction to the wrongful conduct of the defendant."[44] While a multi-million dollar award might get the mortgage industry's attention, the Court believes that the terms of the Order will be more effective than a simple money judgment. This Order is not an impulsive reaction to Wells Fargo's conduct as it has been fashioned after much deliberation and input from the parties themselves.

## Conclusion

For the reasons set forth in this Supplemental Memorandum Opinion, the Court will award $67, 202.45 in sanctions and as actual damages. The Court will also order Wells Fargo to implement and use the accounting procedures as set forth in this Supplemental Memorandum Opinion. A separate Order will be entered.

New Orleans, Louisiana, August 29, 2007.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[43] Decisions reviewed by this Court indicate that other lenders and servicers commit similar violations. *See, e.g., In re Sanchez*, –B.R.–, 2007 WL 2137790, (Bankr. S.D.Tex. 2007) (Ameriquest Mortgage Company); *In re Campbell*, 361 B.R. 831 (Bankr. S.D.Tex. 2007)(Countrywide); and *In re McCormack*, 203 B.R. 521 (Bankr. D.N.H. 1996)(Chase Manhattan Mortgage Company). *See also*, *In re Harris,* Case Nos. 96-10429, 00-11321 Adv. No. 99-1144 (Bankr. S.D. Ala. May 10, 2002) (Text available at <www.alsb.uscourts.gov>) (First Union Mortgage Co.).

[44] *Eichenseer*, 934 F2d at 1385.