UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                          CASE NO.

**MICHAEL L. JONES**                            **03-16518**
                                                SECTION A
DEBTOR
                                                CHAPTER 13


**MICHAEL L. JONES**                            ADVERSARY NO.

PLAINTIFF                                        **06-1093**

VERSUS

**WELLS FARGO HOME MORTGAGE, INC.**

DEFENDANT

### **MEMORANDUM OPINION**

     Michael L. Jones ("Jones" or "Debtor") filed an Adversary proceeding against Wells Fargo

Home Mortgage, Inc. ("Wells Fargo") on March 30, 2006, alleging that Wells Fargo inflated the

payoff for his mortgage when he refinanced his loan.  Trial on the merits was held on January 5,

2007, resulting in a partial judgment on April 13, 2007 ("Partial Judgment").  In its Reasons, the

Court found that Wells Fargo collected undisclosed, unapproved fees and costs and diverted estate

property without authority to satisfy those fees and costs.  On August 29, 2007, this Court entered

an Amended Judgment ("Amended Judgment") requiring Wells Fargo to implement procedures for

the proper application of payments and improved notice to debtors of fees or charges assessed

against their accounts ("Accounting Procedures").[1]  The Judgments were appealed to the District

Court for the Eastern District of Louisiana ("District Court"), which affirmed the majority of this

---

[1] The Accounting Procedures are fully described in the September 14, 2007, Second Amended Judgment
(P-183).

Court's ruling. However, the District Court remanded the case for additional findings regarding the Accounting Procedures.  For the reasons set forth below, the Court will require Wells Fargo to abide by a modified form of the Accounting Procedures.

## I. Facts

The history of this case is well documented,[2] therefore, the Court will narrow its recitation of the facts to those that are immediately relevant to remand.[3]  In its Partial Judgment, the Court determined that Wells Fargo willfully and egregiously violated the automatic stay imposed by 11 U.S.C. § 362 when it "charged Debtor's account with unreasonable fees and costs; failed to notify Debtor that any of these postpetition charges were being added to his account; failed to seek Court approval for same; and paid itself out of estate funds delivered to it for the payment of other debt."[4] The Partial Judgment ordered Wells Fargo to return $16,852.01 to Jones, representing the amount overcharged.[5]  A continued hearing to consider sanctions based on Wells Fargo's violations of the automatic stay and the confirmation order [6] was also scheduled ("Sanctions Hearing").

On May 29, 2007, the following exchange occurred between Wells Fargo's representatives and the Court during the Sanctions Hearing:

> MR. RUMAGE: [Wells Fargo] really want[s] to try and make sure that this does not happen again in the future.  They really-and Ms. Miller [Wells Fargo's Vice President

[2] *See, Jones v. Wells Fargo*, 366 B.R. 584 (Bankr. E.D.La. 2007)("*Jones I*"); *In re Jones* 2007 WL 2480494 (Bankr. E.D.La. 2007)("*Jones II*"); and *Jones v. Wells Fargo*, 391 B.R. 577 (E.D.La. 2008) ("*Jones III*").

[3] The Court adopts and incorporates the facts and its findings in its April 13, 2007, Memorandum Opinion (P-69) and its August 29, 2007 Supplemental Memorandum Opinion (P-153).

[4] *Jones I*, 366 B.R. at 600.

[5] The total amount of the overcharge was $24,450.65.  Wells Fargo returned $7,598.64 after suit was filed.

[6] Case no. 03-16518, pleading 7.

for Bankruptcy] is here to testify if the Court wants her testimony. They are prepared to implement these accounting procedures, to audit every account before the discharge, to make sure that they are doing everything that they possibly can to make sure that they are in compliance with the Court's order.

THE COURT: Are they willing to enter into a consent order on those terms?

MS. MILLER: Yes.

MR. RUMAGE: Yes, Your Honor.

MS. MILLER: Yes, Your Honor.

THE COURT: Okay. Because that would at least give me something to enforce in the future if there was a problem in the future. Okay.[7]

After discussing at length the form and substance of potential accounting procedure changes with an authorized Wells Fargo representative, the Court asked the parties to draft a consent agreement implementing agreed to accounting procedures and settling Jones' request for damages. Eventually, the parties reported that they were unable to reach agreement,[8] and the Court entered the Amended Judgment. The Court also ordered Wells Fargo to pay $67,202.45 to Jones as actual damages for attorneys' fees and costs incurred in the case.[9]

Wells Fargo appealed both the Partial Judgment and the Amended Judgment, which were consolidated into one appeal by the District Court. Wells Fargo asserted as one if its assignments of error on appeal that it never agreed to implement the Accounting Procedures ordered by the Amended Judgment.[10]

The District Court entered a Judgment on July 1, 2008, affirming all findings of fact and the majority of the rulings entered by this Court. The District Court, however, remanded the case for

---

[7] May 29, 2007, Trial Transcript at 83:4-18.

[8] Wells Fargo, in its Opening and Reply Brief on Remand asserts that the parties submitted a proposed Consent Order that was rejected by the Court. This is incorrect.

[9] *Jones II,* at *4-6.

[10] Although Wells Fargo continues to claim that it never consented to the Accounting Procedures, the District Court found that Wells Fargo was "disingenuous." *Jones III*, 391 B.R. at 611.

additional consideration regarding the Accounting Procedures. While the District Court recognized that the Accounting Procedures "may well have seemed justified in light of Wells Fargo having proposed the new accounting procedures in the first place,"[11] it determined that Wells Fargo withdrew its consent on appeal. Since the Accounting Procedures are a form of injunctive relief, the matter was remanded to consider the propriety of the relief in light of Wells Fargo's lack of consent.[12]

This Court set a hearing to consider the remand, but Wells Fargo appealed the District Court's Judgment to The Court of Appeals for the Fifth Circuit ("Fifth Circuit"). The Court stayed the case until the Fifth Circuit dismissed the appeal for lack of jurisdiction on October 1, 2008. The Court re-set the remand hearing for March 13, 2009. On that date, a hearing on the appropriateness of the injunctive relief was held.

## II. Law and Analysis

After considering the findings of the District Court, the relevant law, and the arguments of counsel, the Court makes the following findings.

### Scope of Remand

The parties interpret the scope of remand differently. Jones asserts that the purpose of the remand was to consider an award for punitive damages rather than resorting to injunctive relief. Because this Court did not originally award punitive damages and Jones did not appeal that ruling, Wells Fargo argues that Jones is barred from receiving punitive damages on remand. Wells Fargo

---

[11] *Jones III,* 391 B.R. at 610.

[12] *Id.* The District Court also requested consideration of the "four prong test" for injunctive relief. While this matter was on remand, and in a subsequent but related decision, *In re Stewart*, 2009 WL 2448054 , the District Court revised its directive by noting that the four prong test for injunctive relief was inapplicable to this circumstance, narrowing the scope of this remand.

further insists that the adversary proceeding is now moot because Jones no longer has an interest in the outcome of the case.  Finally, it claims that this Court has no authority to issue an injunction or the relief initially ordered.

The law of the case doctrine provides guidance in determining the scope of a remand. "Under the law of the case doctrine, an issue of fact or law decided on appeal may not be reexamined either by the district court on remand or by the appellate court on a subsequent appeal."[13]  It "directs a court's discretion[;] it does not limit the tribunal's power."[14]  The mandate rule extends the law of the case doctrine and "provides that a lower court on remand must implement both the *letter* and the *spirit* of the [appellate court's] mandate and may not disregard the *explicit* directives of that court."[15]  After considering the law of the case doctrine, the mandate rule, and the District Court's findings in *Jones III*, the Court believes that it may consider an award of punitive damages on remand.

The District Court remanded this matter to consider whether an adequate, alternative, legal remedy to injunctive relief exists.  In order to comply with the District Court's remand order, this Court must determine if other forms of legal relief are available.  Other relief may, of course, include punitive damages.[16]

---

[13] *Tollett v. City of Kemah*, 285 F.3d 357, 363 (5th Cir. 2002)) (*quoting United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998)).

[14] *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391 (1983).

[15] *Tollet,* 285 F.3d at 753 (internal quotation marks omitted; alteration in original; third emphasis added).

[16] *See, e.g., In re Fisher*, 144 B.R. 237, n.1 (Bankr. D.RI. 1992)(noting that the compensatory and punitive damages for a willful stay violation under section 362 constitute a legal remedy).

Further, there has been a subsequent and substantial change in Wells Fargo's position since trial which impacts this Court's prior analysis and Judgments.  At the Sanctions Hearing, Wells Fargo *offered* to institute accounting procedures to protect debtors against the abuses that occurred in this case.  As a result, monetary punitive damages were withheld because the Court mistakenly believed that Wells Fargo would voluntarily change its practices.[17]  Once the Amended Judgment was entered, Wells Fargo changed its position.  This allowed Wells Fargo to avoid punitive damages and allege additional assignments of error on appeal.[18]

On remand, this Court must consider the propriety of injunctive relief versus any other available, alternative sanctions.  If the Court were to conclude that alternative forms of relief were both available and adequate to address the issues presented by this case, the Accounting Procedures would have to be abandoned as unwarranted.  But Wells Fargo argues that the imposition of alternative forms of relief are either beyond the scope of remand or barred by Jones' failure to appeal same.  Therefore, Wells Fargo's position insulates it from the imposition of any sanction if adequate alternative, legal sanctions are available.  This result is especially untenable given that Wells Fargo offered to implement the Accounting Procedures and consented to their inclusion in a court order *in an effort to avoid punitive damages and other sanctions*.  Having changed its mind, the District Court allowed Wells Fargo another day in court on the issue.  However, the Court does not believe that the District Court intended, by remanding the issue, to foreclose all relief against Wells Fargo.

---

[17] It is not uncommon for courts to reduce or eliminate sanctions when the offending party changed its policy to correct the error.  *See, e.g., In re Riddick*, 231 B.R. 265, 269 (Bankr. N.D.Ohio 1999)(providing creditor opportunity to reduce the punitive damages award by filing explanation of how creditor has changed policy to prevent future stay violations).  The Court noted in the Amended Judgment that Wells Fargo's offer regarding the injunctive relief was one of the reasons it did not award punitive damages.  *See Jones II* at *7.

[18] *See Jones III*, 391 B.R. at 612 ("Wells Fargo seems to have shifted its position on the consent order solely for the purposes of seeking reversible error on appeal.").

As a result, the Court concludes that the scope of the remand includes consideration of the adequacy of alternative remedies and, if available, the imposition of those remedies.

Nevertheless, the law of the case doctrine does eliminate some arguments on remand.  Wells Fargo has taken the remand as an opportunity to rehash a number of arguments that the District Court rejected on appeal or that Wells Fargo failed to raise on appeal.  The scope of the remand prevents consideration of either.  Accordingly, the Court will not consider Wells Fargo's argument that the Court lacks authority to issue the injunction[19] because it was previously disposed of by the District Court.[20]  Similarly,  Wells Fargo failed to raise its case or controversy arguments on appeal; and therefore, the issue is waived.[21]

### *Res Judicata*

Wells Fargo argues that the doctrine of *res judicata* bars the Court from awarding punitive damages.  The Fifth Circuit has defined *res judicata*:

> In this circuit, an action is barred by the doctrine of *res judicata* if: 1) the parties are identical in both actions ... ; 2) the judgment in the first action is rendered by a court of competent jurisdiction; 3) the first action concluded with a final judgment on the merits; and 4) the same claim or cause of action is involved in both suits.[22]

---

[19] Original Appellate Brief of Wells Fargo, District Court for the Eastern Dist. of La., Case No. 2007 CV 3599 (Jan. 8, 2008).

[20] *Jones III,* 391 B.R. at 609.

[21] Issues not raised on appeal are waived.  *See, e.g., In re Bradley*, 501 F.3d 421, 433 (5th Cir. 2007).  Even if either of the above arguments were preserved on remand, if the District Court believed that this Court lacked the authority to issue an injunction, or if there was no case or controversy to sustain the remand, denial without remand would have occurred.  Furthermore, it is undisputed that courts retain jurisdiction to consider collateral matters after an action is no longer pending.  *See Ratliff v. Stewart*, 508 F.3d 225, 230 (5th Cir. 2007). The Court may impose injunctive relief by virtue of its inherent authority or 11 U.S.C. § 105(a).

[22] *Ellis v. Amex Life Ins. Co*. 211 F.3d 935, 937 (5th Cir. 2000).

The doctrine of *res judicata* furnishes a rule, binding in a subsequent case between the same parties on the same cause of action. *Res judicata* is designed to bar the relitigation of prior judgments. The rule applies only when a subsequent action has been brought.[23] The doctrine is inapplicable in this case because remand is a continuation of the same action.

<u>Power of the Court</u>

The authority of bankruptcy courts to issue civil sanctions is well settled[24] and springs from two sources: section 105 of the Bankruptcy Code[25] and the Court's inherent authority.[26]

One of the key functions of section 105(a) is to "prevent an abuse of process."[27] "Abuse of

---

[23] *G.&.C. Merriam Co. v. Saalfield*, 241 U.S. 22, 29, 36 S.Ct. 477, 480 (1916).

[24] *Matter of Terrebonne Fuel & Lube, Inc.*, 108 F.3d 609 (5th Cir. 1997); *see also In re Hardy*, 97 F.3d 1384 (11th Cir. 1996); *In re Rainbow Magazine, Inc.*, 77 F.3d 278 (9th Cir. 1996); *In re Power Recovery Systems, Inc.*, 950 F.2d 798 (1st Cir. 1991); *In re Skinner*, 917 F.2d 444 (10th Cir. 1990); and *In re Walters*, 868 F.2d 665 (4th Cir. 1989).

[25] *Terrebonne,* 108 F.3d at 613.

[26] *See, e.g., In re Yorkshire LLC,* 540 F.3d 328 (5th Cir. 2008)(one of the most recent of many cases affirming the inherent authority of the bankruptcy court to issue sanctions) as well as, *Citizens Bank & Trust Co. v Case*, 937 F.2d 1014, 1023(5th Cir. 1991); The Court finds Wells Fargo's assertion that the Court has no "inherent authority" to issue an injunction (Pleading 326, Opening Brief on Remand by Wells Fargo) is a statement contrary to established Fifth Circuit precedent. *See Franklin v Elliott*, 15 F.3d 179, 1994 WL 24877 at *2 (5th Cir. Jan.11, 1994)(characterizing argument that bankruptcy courts lack inherent power to sanction as "totally without merit."). Wells Fargo is represented by sophisticated counsel. The Court is left to wonder why such a blatant misstatement of the law was advanced. To mislead the Court is a violation of the Louisiana Rules of Professional Conduct, Art. 16, Rule 3.3(a)(2), Candor Toward the Tribunal ("[a] lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel"). The Court notes this lapse because its not the first time it has happened and cautions the client and counsel that it considers this behavior unacceptable.

[27] Section 105(a) provides that:

> The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

process" is not defined by the Bankruptcy Code. The Restatement (Second) of Torts defines it as "[o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process."[28] Some bankruptcy courts have simply stated that "abuse of process" consists of "maneuvers or schemes which would have the effect of undermining the integrity of the bankruptcy system."[29]

While section 105(a) gives the court a broad range of power, any action executed under that section's authority "cannot be used in a manner inconsistent with the commands of the Bankruptcy Code."[30] Similarly, the Fifth Circuit declared:

> [T]he powers granted by [section 105(a)] may be exercised only in a manner consistent with the provisions of the Bankruptcy Code. That statute does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity.[31]

Thus under section 105, a bankruptcy court may issue any order, process, or judgment necessary or appropriate to carry out the provisions of title 11. Injunctions are just one tool available to a court should section 105 relief be warranted.

---

[28] Restatement (Second) of Torts § 682 (1977).

[29] *In re Eagle-Picher Industries, Inc.,* 169 B.R. 135, 138 n.1 (Bankr. S.D.Ohio 1994); *see also In re Burrell,* 148 B.R. 820, 824 (Bankr. E.D.Va. 1992) (defining abuse of process as situation where inaction by the court "would undermine the integrity of the bankruptcy system.").

[30] *In re Ludlow Hosp. Soc. Inc.,* 124 F.3d 22, 27 (1st Cir. 1997).

[31] *U.S. v. Sutton,* 786 F.2d 1305, 1308 (5th Cir. 1986).

First and foremost, "[t]he principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor'"[32] Wells Fargo's practice of assessing and collecting postpetition fees and charges without notifying debtors flies directly in the face of the principal purpose of the Code.  It is impossible to obtain a fresh start if a debtor faces foreclosure after discharge because of unknown charges that accumulated during the bankruptcy.  It is also axiomatic that property of the estate is within the exclusive jurisdiction of the bankruptcy court.[33]  Wells Fargo's practice of applying estate property to the payment of pre and postpetition obligations at will violates not only this principle but specific court orders entered in this case.

The Court's imposed Accounting Procedures are consistent with Bankruptcy Rule 2016, which requires entities seeking reimbursement of professional expenses from the estate to file an application before receiving the amounts requested.  As explained in *Jones I*, Wells Fargo used estate funds to pay for postpetition professional fees without filing the necessary application.[34] Requiring Wells Fargo to account for all postpetition professional fees enforces the provisions of Rule 2016.    Finally, the injunction will assist in the Court enforcement of the automatic stay instituted by section 362 by prohibiting the application of estate funds (payments) contrary to the provisions of plans of reorgaization and confirmation orders.

---

[32] *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S. Ct. 1105, 1107, 166 L. Ed. 2d 956 (2007).

[33] 28 U.S.C. § 157; *Uranga v. Geib (In re Paso Del Norte Oil Co.)*, 755 F.2d 421, 424 (5th Cir. 1985).

[34] *Jones I*, 366 B.R. at 594.

-10-

While a bankruptcy court might exceed its authority under section 105(a) when it attempts to use its power to negate a provision of the Code,[35] the relief ordered in this case is being used to enforce the Code.  For the above reasons, the injunction ordered is consistent with the provisions of the Bankruptcy Code.

<u>Inherent Authority</u>

Bankruptcy courts  have inherent authority to sanction parties and control their courts.[36]  "It is well-settled that a federal court, acting under its inherent authority, may impose sanctions against litigants or lawyers appearing before the court so long as the court makes a specific finding that they engaged in bad faith conduct."[37]  "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum in their presence and submission to their lawful mandates."[38]  This inherent power is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[39]

A bankruptcy court has the power "to protect its jurisdiction and judgments and to control its docket."[40]  It has been a long standing rule that "[t]he power to issue an injunction when

---

[35] *See, e.g., Smith v. Omni Manufacturing, Inc,* 21 F.3d 660 (5th Cir. 1994); *In re Realty Portfolio, Inc. v. Hamilton,* 125 F.3d 292 (5th Cir. 1997); *Feld v. Zale Corp.* 62 F.3d 746 (5th Cir. 1995).

[36]  *See, e.g., In re Yorkshire LLC,* 540 F.3d 328 (5th Cir. 2008).

[37]  *Id.* at 332.

[38]  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 111 S.Ct. 2123, 2132 (1991).  *See also Citizens Bank & Trust Co. v Case,* 937 F.2d 1014, 1023 (5th Cir. 1991)(holding that the principles stated in *Chambers* "are equally applicable to the bankruptcy court").

[39]  *Id.*

[40]  *Farguson v. Mbank Houston, N.A.*, 808 F2d 358, 360 (5th Cir. 1986).

necessary to prevent the defeat or impairment of its jurisdiction is, therefore, inherent in a court of bankruptcy . . .."[41]  Finally, the Judicial Code provides that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'"[42]

<u>The Appropriateness of Injunctive Relief</u>

Several Fifth Circuit opinions hold that the traditional standards for issuing injunctive relief (*i.e.* irreparable injury and inadequate remedy at law) are inapplicable to injunctions issued to protect a court's inherent authority and control of its docket.[43]  Where monetary sanctions are ineffective in deterring vexatious filings, injunctions are appropriate.  The court's power to enter such orders flows not only from various statutes and rules relating to sanctions, but the inherent power of the court to protect its jurisdiction, its judgments, and to control its docket.[44]

In determining the propriety of a sanction in the form of injunctive relief, a Court considers the party's history of litigation, whether or not it has a good faith basis for pursuing the litigation, the extent of the burden on the court and other parties resulting from the party's filings, and the adequacy of alternative sanctions.[45]

---

[41]   *Continental Illinois Nat. Bank & Trust. Co. Of Chicago v. Chicago R.I. & P. Ry. Co., et. al.*, 294 U.S. 648, 675, 55 S. Ct. 595, 606 (1935).

[42]   28 U.S.C.A § 1651(a).

[43]   *Baum v. Blue Moon Ventures, L.L.C.*, 513 F.3d 181 (5th Cir. 2008); *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

[44]   *Farguson,* 808 F.2d at 359.  (confirming that this inherent power also resides with bankruptcy courts for bad faith conduct occurring in proceedings before them).  *Citizens Bank & Trust Co. v. Case*, 937 F.2d 1014 (5th Cir. 1991).

[45]   *Blue Moon Ventures,* 513 F.3d at 189.

-12-

Having previously found that Wells Fargo's actions were willful and egregious, Jones' right to seek punitive damages was appropriate and constitutes an alternative relief to that ordered by this Court. Nevertheless, the Court is convinced that punitive damages will be inadequate to deter future or existing misconduct.

<u>History of Litigation</u>

Wells Fargo's history before this Court is well documented. This Court has sanctioned Wells Fargo in two additional cases for similar behavior since the Partial Judgment was entered on April 13, 2007.[46] In addition, despite agreeing at trial to the Accounting Procedures, Wells Fargo changed its position on appeal. This has resulted in:

1.  A total of seven (7) days spent in the original trial, status conferences, and hearings before this Court;

2.  Eighteen (18) post-trial, pre-remand motions or responsive pleadings filed by Wells Fargo, requiring nine (9) memorandums and nine (9) objections or responsive pleadings;

3.  Eight (8) appeals or notices of appeal to the District Court by Wells Fargo, with fifteen (15) assignments of error and fifty-seven (57) sub-assignments of error, requiring 261 pages in briefing, and resulting in a delay of 493 days from the date the Amended Judgment was entered to the date the Fifth Circuit dismissed Wells Fargo's appeal for lack of jurisdiction;[47] and

4.  Twenty-two (22) issues raised by Wells Fargo for remand, requiring 161 pages of briefs from the parties in the District Court and 269 additional days since the Fifth Circuit dismissed Wells Fargo's appeal.

---

[46] *See In re Stewart*, 391 B.R. 327 (Bankr. E.D.La. 2008); and *In re Fitch*, 390 B.R. 834 (Bankr. E.D.La. 2008).

[47] *See Jones III*, 391 B.R. at 582.

Also within this litigation, Wells Fargo has, on more than one occasion, distorted the facts, record and law.[48]  While parties have every right to fully litigate their position, the sheer number and magnitude of the post-trial pleadings filed in this and the appellate courts and the lapses in professionalism practiced, convince this Court that Wells Fargo has no interest in voluntarily correcting its mistakes.

This trial and those that followed it, revealed not only transgressions in Wells Fargo's treatment of Jones, but most likely every debtor with a Wells Fargo loan.  The practices and procedures described by Wells Fargo's representative included:

1.    Applying trustee payments to postpetition charges rather than the prepetition debt they were tendered to satisfy;

2.    Applying debtor payments to prepetition charges rather than the postpetition debt they were tendered to satisfy;

3.    Failure to notify borrowers of charges incurred;

4.    Application of payments to accrued fees and charges prior to satisfaction of outstanding principal and interest;

5.    Postpetition imposition of professional fees without prior court approval;

6.    Imposition and payment of postpetition fees from estate funds without disclosure to debtors, trustee, or courts.

All of the above practices are contrary to the Bankruptcy Code and virtually every plan confirmed in this district.  Because Wells Fargo testified that these practices were systematic and implemented in every case filed in the United States, it follows that every case in this district involving Wells Fargo probably contains one or more of the above problems.  The question presented is what, if anything, should be done to rectify the situation?

---

[48] *Supra*, n.8, n.10, n.18, n.26.

-14-

Wells Fargo asserts that every debtor in the district should be made to challenge, by separate suit, the proofs of claim or motions for relief from the automatic stay filed by Wells Fargo. It has steadfastly refused to audit the pleadings or proofs of claim on file in the district for errors and has refused to voluntarily correct any errors that come to light except through threat of litigation. Although its own representatives have admitted that it routinely misapplied payments on loans and improperly charged fees, they have refused to correct past errors. They stubbornly insist on limiting any change in their conduct prospectively, even as they seek to collect on loans in other cases for amounts owed in error.

<u>Burden on Other Parties</u>

Wells Fargo argues that the Court is exceeding its authority because interested parties, not the Court, should bring individual actions to enforce their rights. Because litigation with Wells Fargo has already cost this and other plaintiffs considerable time and expense, the Court can only assume that others who challenge Wells Fargo's claims will meet a similar fate. Over eighty (80%) of the chapter 13 debtors in this district have incomes of less than $40,000.00 per year. The burden of extensive discovery and delay is particularly acute to their interests. In this Court's experience, it takes four to six months for Wells Fargo to produce a simple accounting of a loan's history and over four court hearings. These debtors simply do not have the personal resources to demand much less verify the production of a simple accounting for their loans through a litigation process.

Still, under most circumstances, Wells Fargo might have a valid point. However, the circumstances of this situation are extraordinary. At the heart of the problem is Wells Fargo's failure to disclose to its borrowers/debtors, the trustee, or Court, the nature or amount of fees and charges assessed, both pre and postpetition, or the method it uses to apply payments. Lack of

-15-

disclosure facilitates the injury.  Naive borrowers/debtors, trustees, and creditors rightly assume that Wells Fargo is complying with the plain meaning of its notes, mortgages, court orders, and confirmed plans.  Why would anyone assume otherwise?  Having admitted to a systemwide practice of payment allocation in contravention of notes, mortgages, court orders, and confirmed plans that is *undisclosed*, everyone in the system is lulled into a false sense of trust that Wells Fargo's sworn statements are true to the best of its information and belief.  How are they to challenge a practice or demand correction of an error they do not know exists?

The record should also reflect that Wells Fargo's practices potentially affect every creditor participating in their cases.  Few debtors pay every creditor in full.  Secured lenders, like Wells Fargo, receive payments sometimes in priority with, other times in parity with, unsecured claims. Thus, any error in the calculation of secured debt not only damages a borrower/debtor, but also other creditor interests by depriving them of distributions.  Because Wells Fargo's practices are systematic and may affect every case and pleading it has filed in this district, this Court cannot and will not turn a blind eye to the full scope of the damage revealed.

The Court's concerns over Wells Fargo's existing and past practices are not limited to its concern for the other participants in cases filed in this district.  Wells Fargo's position also requires the Court to participate in its egregious conduct.  The bankruptcy system established by Congress relies heavily on sworn statements from both debtor and creditor.[49]  This avoids unnecessary discovery and trial time, reduces costs to debtors and creditors, and speeds the resolution of cases. Candor to the court, both by debtor and creditor, is essential should information originally offered

---

[49] *See, e.g.,* the Official Forms for a Declaration Concerning Debtor's Schedules and Statement of Financial Affairs, which contain a signed declaration under penalty of perjury; *see also* the Official Form for a Proof of Claim, which must be signed by the creditor and notes the penalty for presenting a fraudulent claim.

-16-

be suspect or wrong.

This Court makes substantive decisions every day based on the calculations Wells Fargo presents in proofs of claim and motions for relief from the automatic stay. Wells Fargo's representations often go unquestioned because debtors cannot afford to litigate or even verify the amount presented.  Yet Wells Fargo's testimony revealed that its calculations of debt are at best questionable and more likely wrong.  In this case the error totaled $24,450.65.  In a follow up case, *In re Stewart*, the error was $10,111.90.[50]  Without much imagination, one arrives at the unsettling question of how many cases might have been confirmed or completed if unsuspected errors were discovered prior to dismissal.  Equally troubling is the likelihood that many debtors overpaid, under court order, based on Wells Fargo's erroneous amortization methods.

Wells Fargo's refusal to verify and correct, if necessary, existing proofs of claim, its motions for relief from the automatic stay, objections to confirmation, or responses to objections to claims requires this Court to honor and *enforce* pleadings which it has every suspicion are incorrect. Because Wells Fargo takes a "scream or die" approach to judicial review, it would require this Court to not only honor, but enforce collection on illegally imposed debt.  Were this Court to limit the scope of relief, not only does it believe that Wells Fargo would continue to misapply payments and collect undisclosed charges and unauthorized postpetition professional fees in contravention of court orders, this Court would be enlisted to assist in the effort.

As a result, the injunctive relief ordered is considered under this Court's inherent authority to control its docket, jurisdiction, and the integrity of the judicial system.  At its core, the relief is warranted as a means to ensure that the pleadings filed by Wells Fargo are accurate or are

---

[50] 391 B.R. at 355.

immediately corrected.  The unusual action being taken is necessitated by Wells Fargo's refusal to voluntarily correct its pleadings, particularly proofs of claim already on file, which it has every reason to believe are substantially incorrect.[51]

<u>Adequacy of Alternative Remedies/ Punitive Damages</u>

Both parties agree that a legal remedy to address stay violations exists under section 362(k)(1), which provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[52]  Wells Fargo argues that the Court has already imposed an adequate legal remedy because Debtor has been reimbursed for his actual damages, *i.e.* his attorney fees.  It maintains that punitive damages are not warranted and the Accounting Procedures are unnecessary and exceed this Court's authority.  Jones does not oppose the Accounting Procedures but argues that Wells Fargo's stay violation was both willful and egregious and warrants the imposition of substantial punitive damages, which are also allowed under the statute.

"Punitive damages may be recovered when the creditor acts with actual knowledge of the violation or with reckless disregard of the protected right."[53]  It has also been held that "where an arrogant defiance of federal law is demonstrated, punitive damages are appropriate."[54]  Either standard justifies the assessment of punitive damages in this case.  Further, the District Court found

---

[51] *See In re Stewart*, 2008 WL 5096011, at *4 (Bankr. E.D.La. 2008).

[52] *See also In re Fisher*, 144 B.R. 237, n.1 (Bankr. D.RI 1992) (noting that the compensatory and punitive damages provided for a willful stay violation under section 362 is a legal remedy).

[53] *In re Dynamic Tours & Transportation, Inc.*, 359 B.R. 336, 343 (Bankr. M.D.Fla. 2006).

[54] *Id.* at 344.

that "[t]he Bankruptcy Court clearly had the authority to impose punitive damages against Wells Fargo pursuant to Section 362 because the Bankruptcy Court determined that Wells Fargo's conduct was egregious."[55]

The purpose of punitive damages is to punish and deter.[56]  While this Court believes that punitive damages could be imposed, it does not believe that they will either deter or punish Wells Fargo sufficiently to curb its behavior.  The case of *Slick v. Norwest Mortgage, Inc., et al*[57] makes this point abundantly clear.

Norwest Mortgage, Inc., n/k/a Wells Fargo, was assessed $2,000,000 in exemplary damages in *Slick* for charging postpetition attorneys fees to debtors' accounts without disclosing the fees to anyone.[58]  Four years after the ruling in *Slick*, Jones found that Wells Fargo continued to charge undisclosed postpetition fees despite that multi-million dollar damage assessment.  Now Wells Fargo asserts that it will change its conduct, but only prospectively, perhaps allowing it to retain millions of dollars in unwarranted and improper fees, interest and charges.[59]

Wells Fargo's representative testified that Wells Fargo administered Jones' loan in accordance with company policy.  The District Court has affirmed this Court's determination that

---

[55] *Id.* at 609.

[56] Restatement (Second) of Torts § 908(1) (1977); *see, e.g., Ratner v. Sioux Natural Gas Corp.*, 719 F.2d 801, 804 (5th Cir. 1983).

[57] *Slick v. Norwest Mortgage, Inc.,* 2002 Bankr. Lexis 772 (Bankr.S.D.Ala. 2002).

[58] *Id.* at 32.

[59]  Wells Fargo administers over 7.7 million loans nationwide.  Just one improper fee or interest accrual of $10.00 per loan in any given year amounts to $77 million in revenue.  More troubling is the fact that the cases tried in this Court involved tens of thousands of dollars in errors which if extrapolated to Wells Fargo's entire portfolio, could potentially signal billions in improperly earned revenue.

-19-

Wells Fargo's policies cause it to violate the automatic stay.[60]  Wells Fargo insists, however, that it may continue to follow the same policies that caused it to violate the automatic stay, and neither this Court, nor any other, can require otherwise.  Further, it insists that it has no obligation to correct its errors whether contained in filed proofs of claim or pending motions for relief from the automatic stay.  Nor does it believe that it owes any duty to reimburse borrowers for funds wrongfully collected due to its misapplication of payments and resulting errors in amortization of the loan.  In short, Wells Fargo has developed, and continues to follow, a litigation position that defends its right to  continually violate  the automatic stay and orders of confirmation.  Wells Fargo, acts with full knowledge of the protected rights.  Furthermore, its insistence that it may do so, despite clear findings to the contrary, reveals an arrogant defiance of federal law.

The purpose of the Accounting Procedures is to prevent Wells Fargo from violating the automatic stay by secretly assessing fees and costs against debtors and collecting from property of the estate.  It is also to enforce orders of confirmation issued in the district. The Accounting Procedures have successfully forced Wells Fargo to apprise debtors of postpetition fees and costs that have been assessed against their accounts and will continue to do so.  Because Wells Fargo refused to correct its past mistakes for cases pending when this decision was rendered, this Court added in *In re Stewart*, a requirement that Wells Fargo audit each and every case on file in this district as of April 13, 2007.[61]  Those audits are ongoing, but audits of the first fifty (50) accounts revealed discrepancies, in all but two cases, between the proper amortization of Wells Fargo loans and the proofs of claims on file.  Copies of the corrected loan histories are being submitted to the

---

[60] *Jones III*, 391 B.R. at 605.

[61] *In re Stewart*, 2008 WL 5096011, *1 (Bankr.E.D.La. 2008).

relevant parties as completed.  Having been made aware of potential errors in their accounts, the parties are now free to pursue, or not, their legal remedies.

Punitive damages alone are insufficient to stop Wells Fargo's improper business practices, and the Court is convinced that there is no adequate alternative legal remedy to force its compliance with the Bankruptcy Code.  The Accounting Procedures have been successfully operating for two years, and their continued enforcement is the only means of protecting debtors in the district.

Debtor urges the Court to impose both punitive damages and the Accounting Procedures, arguing that the remedies are not exclusive.  However, for the reasons set forth above, the Court does not agree.  As previously explained, punitive damages are not designed to compensate or remedy a wrong committed against a particular plaintiff, but to punish and deter unacceptable behavior in the future. If the Court believed that punitive damages would deter Wells Fargo's conduct, then the Accounting Procedures or injunctive relief it is ordering today would be both unwarranted and unnecessary.  Instead, this Court is convinced that punitive damages will not be adequate to curb Wells Fargo's offensive behavior in the future, injunctive relief is being implemented.  Any additional award of punitive damages is inconsistent with this position.

Accounting Procedures

Wells Fargo argues that the portion of Section 2 of the Accounting Procedures improperly binds third party debtors who are not participating in this lawsuit.  The portion in question reads:

The notice shall also state that debtors, the Trustee, and any other interested party, shall have 30 days within which to object to any or all assessments outlined in the notice.  It shall contain a statement to the effect that debtor may elect to add the charges to his plan with approval of the bankruptcy court, satisfy the charges directly outside the plan, or defer repayment until the conclusion of his case.

If no objection to the amounts provisionally assessed is filed, or if filed, upon entry of an order approving some amount of the provisional charges, Wells Fargo may

-21-

submit a proposed *ex parte* order authorizing assessment of the Post-Petition Charges as set forth in its notice or as approved by the court, as applicable. However, Wells Fargo may not collect on any approved Post-Petition Charges unless the debtor voluntarily delivers payment separate and above from that due as a regular monthly installment or obtains approval of the court to modify the plan and satisfy the amounts due through periodic payments by the Trustee. If the approved Post-Petition Charges are to be paid through the modified plan, they will be added to Account One and satisfied by the Trustee. If to be paid by the debtor, they may be added to Account Two.

Because Wells Fargo has requested this change, the Court will amend the Accounting Procedures to remove the requirement that debtors object to the notice within thirty (30) days.[62]

New Orleans, Louisiana, October 1, 2009.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge

---

[62] The Court notes that amendments to the Federal Bankruptcy Rules are pending which would implement the postpetition noticing procedures ordered in the Amended Judgment and impose time limits on debtors for objecting to same.

-22-