UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| IN RE: | CASE NO. |
| **MICHAEL L. JONES** | **03-16518** |
| DEBTOR | SECTION A |
| | CHAPTER 13 |
| **MICHAEL L. JONES** | ADVERSARY NO. |
| PLAINTIFF | **06-1093** |
| VERSUS | |
| **WELLS FARGO HOME MORTGAGE, INC.** | |
| DEFENDANT | |

**<u>MEMORANDUM OPINION</u>**

This matter is on remand from the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit")[1] and the United States District Court for the Eastern District of Louisiana ("District Court").[2] The mandate required reconsideration of monetary sanctions in light of *In re Stewart*.[3] The parties were afforded time to file additional briefs, after which the matter was taken under advisement.[4]   Wells Fargo Bank, N.A. ("Wells Fargo")  also filed an *Ex Parte* Motion to Take Judicial Notice[5] which will be addressed in this Opinion.

---

[1] 5th Cir. case no. 10-31005; *Wells Fargo Bank, N.A. v. Jones (In re Jones)*, 439 Fed.Appx. 330 (5th Cir. 2011).

[2] USDC, EDLA case no. 07-3599.

[3] *Wells Fargo Bank, N.A. v. Stewart (In re Stewart)*, 647 F.3d 553 (5th Cir. 2011).

[4] Docket no. 455.  The parties indicated that the Court should use the briefs they previously filed in connection with the Motion for Sanctions rather than submitting entirely new briefs.  Docket nos. 78, 96.  The parties were allowed to supplement these initial briefs.

[5] Docket no. 459.

## I. Jurisdiction

The bankruptcy court has jurisdiction over all property of the estate wherever located.[6] Upon filing of the case, all actions to collect, enforce, or possess property of the estate are automatically enjoined.[7] Proceedings to prosecute violations of the automatic stay are core proceedings.[8] A proceeding to enforce the automatic stay by means of civil contempt is a "core proceeding" within the meaning of 28 U.S.C. § 157 and within the scope of the bankruptcy court's powers.[9] A contempt order is purely civil "[i]f the purpose of the sanction is to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation."[10] The Court finds that it has jurisdiction over this proceeding for civil contempt.

## II. Procedural Background

This adversary proceeding was filed by Michael L. Jones, debtor, ("Jones" or "Debtor") in an effort to recoup overpayments made to Wells Fargo on his home mortgage loan. The complaint requested return of the overpayments, reimbursement of actual damages, and punitive damages for violation of the automatic stay. At trial, the parties severed Debtor's request for compensatory and

---

[6] 28 U.S.C. §§ 157(a) and 1334(e) and 11 U.S.C. § 541.

[7] 11 U.S.C. § 362.

[8] *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 292 (4th Cir. 1986); *Milbank v. McGee (In re LATCL&F, Inc.)*, 2001 WL 984912, *3 (N.D.Tex. 2001).

[9] 11 U.S.C. § 105(a); *Matter of Terrebonne Fuel and Lube, Inc.,* 108 F.3d 609 (5th Cir. 1997); *In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009); *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 108-109 (2nd Cir. 2006); *In re Nat. Century Financial Enterprises, Inc.*, 423 F.3d 567, 573-574 (6th Cir. 2005).

[10] *Lamar Financial Corp. v. Adams,* 918 F.2d 564, 566 (5th Cir. 1990).

2

punitive damages from the merits of Debtor's claim for return of overpayments.  On April 13, 2007, the Court entered an Opinion[11] and Partial Judgment[12] awarding Jones $24,441.65, plus legal interest for amounts overcharged by Wells Fargo.   In addition, the Opinion found Wells Fargo to be in violation of the automatic stay because it applied postpetition payments made by Jones and his trustee to undisclosed postpetition fees and costs not authorized by the Court, noticed to Debtor or his trustee, and in contravention of Debtor's confirmed plan of reorganization and the Confirmation Order.[13]  Wells Fargo's conduct was found to be willful and egregious.[14]

A second hearing on sanctions, damages, and punitive relief was held on May 29, 2007.[15] At the hearing, Wells Fargo offered to implement several remedial measures designed to correct systemic problems with its accounting of home mortgage loans ("Accounting Procedures").[16]  The new Accounting Procedures were negotiated between the Court and Wells Fargo's representative. They were embodied in a subsequent Supplemental Memorandum Opinion,[17] Amended Judgment,[18]

---

[11] Docket no. 69; *In re Jones*, 366 B.R. 584 (Bankr.E.D.La. 2007).

[12] Docket no. 68.

[13] Docket no. 69.

[14] *Id.*

[15] Jones also filed a Motion for Sanctions, Including Punitive Damages. Docket no. 77.

[16]  Tr.T. 5/29/01, 48:18-23; 63:2-21; 83:4-10; 92:24-93:4. Docket no. 126.

[17] Docket no. 153; *Jones v. Wells Fargo Home Mortgage, Inc., (In re Jones)*, 2007 WL 2480494 (Bankr.E.D.La. 2007).

[18] Docket no. 154.

and Administrative Order 2008-1.  The Amended Judgment also awarded Jones $67,202.45 in compensatory sanctions for attorney's fees and costs.[19]

Following its agreement, Wells Fargo reversed its legal position and appealed the Amended Judgment to the District Court.

On appeal, the District Court affirmed the findings of this Court and increased the compensatory civil award to $170,824.96.  However, because Wells Fargo withdrew its consent to the nonmonetary relief ordered, the issue of punitive damages was remanded for further findings and consideration.[20]  Wells Fargo appealed the District Court remand, but the Fifth Circuit dismissed the appeal for lack of jurisdiction.[21]

For the reasons set forth in the Opinion dated October 1, 2009, this Court imposed the original sanctions ordered, the Accounting Procedures, *in lieu* of punitive damages ("Partial Judgment on Remand").[22]  Based on the findings of the District Court, this Court also entertained Jones' request for an increase in compensatory sanctions.  Wells Fargo opposed the request, but settled the matter for an undisclosed stipulated amount.[23]  Jones appealed the denial of punitive damages.[24]

---

[19] *Id.*

[20] USDC, EDLA case no. 07-3599, docket nos. 76, 77; *Wells Fargo Bank, N.A. v. Jones*, 391 B.R. 577 (E.D.La. 2008).

[21] 5th Cir. case no. 08-30735.

[22] Docket nos. 390, 392; *Jones v. Wells Fargo Home Mortgage, Inc., (In re Jones)*, 418 B.R. 687 (Bankr.E.D.La. 2009).

[23] Docket no. 417.

[24] Docket no. 424.

4

On August 24, 2010, the District Court affirmed the Partial Judgment on Remand.[25]   Again, Jones appealed the denial of punitive relief to the Fifth Circuit.

On August 23, 2007, more than four (4) months after this Court entered its initial opinion in this case, Ms. Dorothy Stewart filed an Objection to the Proof of Claim of Wells Fargo in her bankruptcy case pending in this district.  The Objection alleged in part that the amount claimed by Wells Fargo in its proof of claim was incorrect because prepetition payments had been improperly applied.[26]

The Memorandum Opinion issued in the *Dorothy Stewart* case found that Wells Fargo misapplied her payments in a fashion identical to *Jones*.[27]  As with the *Jones* decision, Wells Fargo's actions resulted in an incorrect amortization of Ms. Stewart's debt and the imposition of unauthorized or unwarranted fees and costs.  Because Wells Fargo's failure was a breach of its obligations under the Partial Judgment on Remand, it was ordered to audit every borrower with a case pending in this district for compliance with the Accounting Procedures ("*Stewart* Judgment").[28]

The *Stewart* Judgment was affirmed by the District Court after Wells Fargo appealed.[29] Wells Fargo then appealed the *Stewart* Judgment to the Fifth Circuit.

---

[25] USDC, EDLA case no. 07-3599, docket no. 139;  *Jones v. Wells Fargo Bank N.A.*, 2010 WL 3398849 (E.D.La. 2010).  *See also* USDC, EDLA case no. 09-7635, docket no. 11.

[26] USBC, EDLA case no. 07-11113, docket no. 24.

[27] *Id.* at docket no. 61; *In re Stewart*, 391 B.R. 327 (Bankr.E.D.La. 2008).

[28] *Id.* at docket no. 62.

[29] *In re Stewart*, 2009 WL 2448054 (E.D.La. 2009).

The Fifth Circuit affirmed the findings and compensatory award contained in the *Stewart* Judgment.[30]  However, the Fifth Circuit also found that the order requiring audits of debtor accounts was beyond this Court's jurisdiction.  As a result, this portion of the relief was vacated .  The *Stewart* appeal preceded hearing on the *Jones'* appeal.  In light of *Stewart*, the Fifth Circuit remanded the Partial Judgment on Remand for consideration of alternative,  punitive monetary sanctions.[31]

## III.  Facts

The facts of this case are well documented in previous Opinions.   Those facts are incorporated by reference.[32]   Only facts immediately relevant to remand will be restated.  Wells Fargo willfully violated the automatic stay imposed by 11 U.S.C. § 362 when it:

> [C]harged Debtor's account with unreasonable fees and costs; failed to notify Debtor that any of these postpetition charges were being added to his account; failed to seek Court approval for same; and paid itself out of estate funds delivered to it for payment of other debt.[33]

Jones has already been awarded $24,441.65 for amounts overcharged on his loan; legal interest from March 30, 2006, until paid in full; and $170,824.96 in actual attorney's fees and costs. In addition, the to the amounts included in judgments rendered to date, Jones also incurred additional legal fees of $118,251.93 and $3,596.95 in costs.  The additional fees and costs are

---

[30] *In re Stewart*, 647 F.3d 553 (5th Cir. 2011).

[31] *Id.*

[32] Docket nos. 69, 153, 390;  USDC, EDLA case no. 07-3599, docket no. 76; USDC, EDLA case no. 09-7635, docket no. 11.

[33] *Jones*, 366 B.R. at 600.

supported by Jones' Application for Award Of Fees And Costs Related To Remand filed in the record of this case.[34]

## IV.  Motion to Take Judicial Notice

Both the Partial Judgment on Remand and Administrative Order 2008-1 contemplated an internal review by Wells Fargo of all loan files to ensure the proper application of payments on home mortgage loans.  Wells Fargo did not comply as evidenced by the *Stewart* decision. Instead, Wells Fargo continued to seek payment on prepetition monetary defaults calculated through the improper amortization of home mortgage loans.

As a result, in *Stewart*, this Court ordered Wells Fargo "to audit all proofs of claim [] filed in this District in any case pending on or filed after April 13, 2007, and to provide a complete loan history on every account."[35]  Wells Fargo was ordered to amend the proofs of claim to comport with the loan histories.  Wells Fargo appealed *Stewart* arguing that the Court was without authority to enforce the Accounting Procedures.  Wells Fargo did not argue to the Fifth Circuit that the relief it challenged had already been performed.  Quite simply if it had, its appeal would have been rendered moot.

Wells Fargo now requests this Court take judicial notice of its compliance with Administrative Order 2008-1 as a mitigating factor in any assessment of punitive damages.   To evaluate this claim, the problems found in this case and the remedies embodied in Administrative Order 2008-1 must be examined in detail.

---

[34]   Docket no. 396.

[35] *In re Stewart*, 391 B.R. 327, 357 (Bankr.E.D.La. 2008).

7

In this case, Wells Fargo testified that every home mortgage loan was administered by its proprietary computer software.  The evidence established:

1. Wells Fargo applied payments first to fees and costs assessed on mortgage loans, then to outstanding principal, accrued interest, and escrowed costs.  This application method was directly contrary to the terms of Jones' note and mortgage, as well as,  Wells Fargo's standard form mortgages and notes.  Those forms required the application of payments first to outstanding principal, accrued interest, and escrowed charges, then fees and costs.  The improper application method resulted in an incorrect amortization of loans when fees or costs were assessed.  The improper amortization resulted in the assessment of additional interest, default fees and costs against the loan. The evidence established the utilization of this application method for every mortgage loan in Wells Fargo's portfolio.

2. Wells Fargo applied payments received from a bankruptcy debtor or trustee to the oldest charges outstanding on the mortgage loan rather than as directed by confirmed plans and confirmation orders.  This resulted in the incorrect amortization of mortgage loans postpetition.  Again, the improper amortization resulted in additional interest, default fees and costs to the loan.  The evidence established the utilization of this application method for every mortgage loan administered by Wells Fargo in bankruptcy.

3.  When postpetition fees or costs were assessed on a loan in bankruptcy, Wells Fargo applied payments received from the bankruptcy debtor to those  fees and charges without disclosing the assessments or requesting authority.  The payments were property of the estate, they were applied contrary to the terms of plans and confirmation orders, and in violation of the automatic stay.  This practice resulted in the incorrect amortization of mortgage loans postpetition.  Again, the

improper amortization resulted in the addition of increased interest, default fees and costs to the loan balance. The evidence established the utilization of this application method for every Wells Fargo mortgage loan in bankruptcy.

Wells Fargo's practices led to the following conclusions:

1. Applications contrary to the contract terms of Wells Fargo's standard form notes and mortgages resulted in an incorrect amortization of the loan. As a result, monetary defaults claimed by Wells Fargo on the petition date were incorrect.

2. Misapplication of payments received postpetition resulted in incorrect amortization of Wells Fargo loans and threatened a debtor's fresh start, as well as, discharge.

3. Application of postpetition payments to new, undisclosed postpetition fees or costs also threatened a debtor's fresh start and discharge.

The Partial Judgment on Remand and Accounting Procedures were crafted to remedy the above problems. They were designed to protect debtors from incorrectly calculated proofs of claim, to verify that loans were properly amortized prepetition in accordance with the terms of notes and mortgages, and to ensure that postpetition amortizations were in compliance with the terms of confirmed plans and orders. Because the evidence established that the problems exposed with the *Jones'* loan were systemic, Administrative Order 2008-1 and the Partial Judgment on Remand required corrective action on existing loans in bankruptcy for past errors, as well as, ongoing future performance.

There is nothing in the record supporting Wells Fargo's assertion that it has corrected its past errors. There is nothing in the record to assure future compliance with the terms of notes,

mortgages, confirmed plans or confirmation orders.  Therefore, Wells Fargo's request for judicial notice of compliance is denied.

Wells Fargo has also requested judicial notice of the fact that after the completion of the first remand to this Court, it abandoned any challenge to the compensatory portions of the  judgments in favor of Jones.  This request has been granted.  The overpayments on the loan and costs associated with recovery are limited to costs and legal fees incurred through the initial remand. Specifically, they are based on awards rendered prior to that remand and include additional fees and costs incurred by Jones through the remand, as set forth in the Application.

## V.  Law and Analysis

This Court previously found that Wells Fargo willfully violated the automatic stay imposed by 11 U.S.C. § 362.[36]  That ruling is not at issue.  The only issue before the Court is the appropriate relief available.  In light of the Fifth Circuit's ruling in *Stewart*, the application of the Accounting Procedures to all debtors in the district would be an improper exercise of authority beyond the bounds of this case.  Because this relief was ordered *in lieu* of punitive sanctions, the mandate on remand directs that monetary relief be considered.

Section 362(k) allows for the award of actual damages, including costs and attorneys' fees, as a result of a stay violation, and punitive damages "in appropriate circumstances."  Punitive damages are warranted when the conduct in question is willful and egregious,[37] or when the defendant acted "with actual knowledge that he was violating the federally protected right or with

---

[36] Docket nos. 153, 154; *In re Jones*, 2007 WL 2480494 (Bankr.E.D.La. 2007).

[37] *In re Ketelsen*, 880 F.2d 990, 993 (8th Cir. 1989).

10

reckless disregard of whether he was doing so."[38]   There is no question that Wells Fargo's conduct was willful.  As previously decided, Wells Fargo clearly knew of Debtor's pending bankruptcy and was represented by bankruptcy counsel in this case.  Wells Fargo is a sophisticated lender with thousands of claims in bankruptcy cases pending throughout the country and is familiar with the provisions of the Bankruptcy Code, particularly those regarding the automatic stay.

Wells Fargo assessed postpetition charges on this loan while in bankruptcy.   However, it was not the assessment of the charges, but the conduct which followed that this Court found sanctionable.  Despite assessing postpetition charges, Wells Fargo withheld this fact from its borrower and diverted payments made by the trustee and Debtor to satisfy claims not authorized by the plan or Court.  Wells Fargo admitted that these actions were part of its normal course of conduct, practiced in perhaps thousands of cases.  As a result of the evidence presented, the Court also found Wells Fargo's actions to be egregious.  There is also no question that Wells Fargo exhibited reckless disregard for the stay it violated.

The imposition of punitive awards are designed to discourage future misconduct and benefit society at large.[39] Sanctions are "not merely to penalize those whose conduct may be deemed to

---

[38] *In re Sanchez*, 372 B.R. 289, 315 (Bankr. S.D.Tex. 2007) (citations omitted).

[39] *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-267, 101 S.Ct. 2748, 2759 (1981) ("[punitive damages by definition are not intended to compensate the injured party, but rather to punish the tortfeasor whose wrongful action was intentional or malicious, and to deter him and others from similar extreme conduct.");  Restatement (Second) of Torts § 908 (1979) (the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence).

warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent."[40]

The Supreme Court, in *Pacific Mutual Life Ins. Co. v. Haslip*, ruled that punitive damage awards must address both reasonableness and adequate guidance concerns to satisfy the Fourteenth Amendment's due process clause.[41]   The Fifth Circuit developed a two part test to help courts determine whether the requirements set forth under *Haslip* are met: "(1) whether the circumstances of the case indicate that the award is reasonable; and (2) whether the procedure used in assessing and reviewing the award imposes a sufficiently definite and meaningful constraint on the discretion of the factfinder."[42]

In *BMW of North America, Inc. v. Gore*, the Supreme Court examined three (3) factors in determining the propriety of a punitive damage award:

1)      "the degree of reprehensibility;"

2)      the ratio between the punitive damages and the actual harm; and

3)      "the difference between this remedy and the civil penalties authorized or imposed in comparable cases."[43]

---

[40] *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 2781, 49 L. Ed. 2d 747 (1976).

[41] *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 17, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).

[42] *Eichenseer v. Reserve Life Ins. Co.*, 934 F.2d 1377, 1981 (5th Cir. 1991).

[43] *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575, 116 S.Ct. 1589, 1598-1599 (1996).

## A.  Degree of Reprehensibility

"[I]nfliction of economic injury, especially when done intentionally through affirmative acts of misconduct, or when the target is financially vulnerable, can warrant a substantial penalty."[44] Wells Fargo did not adjust Jones' loan as current on the petition date and instead continued to carry the past due amounts contained in its proof of claim in Jones' loan balance.  It also misapplied funds regardless of source or intended application, to pre and postpetition charges, interest and non-interest bearing debt in contravention of the note, mortgage, plan and confirmation order.  Wells Fargo assessed and paid itself postpetition fees and charges without approval from the Court or notice to Jones.

The net effect of Wells Fargo's actions was an overcharge in excess of $24,000.00.  When Jones questioned the amounts owed, Wells Fargo refused to explain its calculations or provide an amortization schedule.  When Jones sued Wells Fargo, it again failed to properly account for its calculations.  After judgment was awarded, Wells Fargo fought the compensatory portion of the award despite never challenging the calculations of the overpayment.  In fact, Wells Fargo's initial legal position both before this Court[45] and in its first appeal[46] denied any responsibility to refund payments demanded in error!  The cost to Jones was hundreds of thousands of dollars in legal fees and five (5) years of litigation.

---

[44] *Id. at* 1599.

[45] Docket no. 50, pp. 11-17.

[46] Docket no. 97, p. 2.

While every litigant has a right to pursue appeal, Wells Fargo's style of litigation was particularly vexing. After agreeing at trial to the initial injunctive relief in order to escape a punitive damage award, Wells Fargo changed its position and appealed. This resulted in:

> 1. A total of seven (7) days spent in the original trial, status conferences, and hearings before this Court;

> 2. Eighteen (18) post-trial, pre-remand motions or responsive pleadings filed by Wells Fargo, requiring nine (9) memoranda and nine (9) objections or responsive pleadings;

> 3. Eight (8) appeals or notices of appeal to the District Court by Wells Fargo, with fifteen (15) assignments of error and fifty-seven (57) sub-assignments of error, requiring 261 pages in briefing, and resulting in a delay of 493 days from the date the Amended Judgment was entered to the date the Fifth Circuit dismissed Wells Fargo's appeal for lack of jurisdiction;[47] and

> 4. Twenty-two (22) issues raised by Wells Fargo for remand, requiring 161 pages of briefing from the parties in the District Court and 269 additional days since the Fifth Circuit dismissed Wells Fargo's appeal.

The above was only the first round of litigation contained in this case. After the District Court remanded based on Wells Fargo's change of heart, Wells Fargo appealed the decision to remand. When that was denied, it took the legal position that the remand did not afford this Court the right to impose punitive damages *in lieu* of the Accounting Procedures it had both proposed and consented to undertake. That position if valid, would have allowed Wells Fargo to propose alternative relief to escape punitive damages; when the offer was accepted, challenge the relief it proposed; and avoid any punitive award, a position as untenable as it was illogical.

---

[47] *See Jones*, 391 B.R. at 582.

Following this Court's ruling on remand, Wells Fargo appealed to the District Court once again, unsuccessfully. Yet another appeal to the Fifth Circuit was abandoned, but the same issues were then challenged by litigating and appealing the *Stewart* case.[48]

Wells Fargo has taken the position that every debtor in the district should be made to challenge, by separate suit, the proofs of claim or motions for relief from the automatic stay it files. It has steadfastly refused to audit its pleadings or proofs of claim for errors and has refused to voluntarily correct any errors that come to light except through threat of litigation. Although its own representatives have admitted that it routinely misapplied payments on loans and improperly charged fees, they have refused to correct past errors. They stubbornly insist on limiting any change in their conduct prospectively, even as they seek to collect on loans in other cases for amounts owed in error.

Wells Fargo's conduct is clandestine. Rather than provide Jones with a complete history of his debt on an ongoing basis, Wells Fargo simply stopped communicating with Jones once it deemed him in default. At that point in time, fees and costs were assessed against his account and satisfied with postpetition payments intended for other debt without notice. Only through litigation was this practice discovered. Wells Fargo admitted to the same practices for all other loans in bankruptcy or default. As a result, it is unlikely that most debtors will be able to discern problems with their accounts without extensive discovery.

Unfortunately, the threat of future litigation is a poor motivator for honesty in practice. Because litigation with Wells Fargo has already cost this and other plaintiffs considerable time and

---

[48] Wells Fargo was also sanctioned in two other cases for similar behavior since the Partial Judgment was entered on April 13, *2007. See In re Stewart*, 391 B.R. 327 (Bankr. E.D.La. 2008); *In re Fitch*, 390 B.R. 834 (Bankr. E.D.La. 2008).

expense, the Court can only assume that others who challenge Wells Fargo's claims will meet a similar fate.

Over eighty (80%) of the chapter 13 debtors in this district have incomes of less than $40,000.00 per year.  The burden of extensive discovery and delay is particularly overwhelming. In this Court's experience, it takes four (4) to six (6) months for Wells Fargo to produce a simple accounting of a loan's history and over four (4) court hearings. Most debtors simply do not have the personal resources to demand the production of a simple accounting for their loans, much less verify its accuracy,  through a litigation process.

Wells Fargo has taken advantage of borrowers who rely on it to accurately apply payments and calculate the amounts owed.  But perhaps more disturbing is Wells Fargo's refusal to voluntarily correct its errors.  It prefers to rely on the ignorance of borrowers or their inability to fund a challenge to its demands, rather than voluntarily relinquish gains obtained through improper accounting methods.  Wells Fargo's conduct was a breach of its contractual obligations to its borrowers. More importantly, when exposed, it revealed its true corporate character by denying any obligation to correct its past transgressions and mounting a legal assault ensure it never had to. Society requires that those in business conduct themselves with honestly and fair dealing. Thus, there is a strong societal interest in deterring such future conduct through the imposition of punitive relief.

Both parties agree that a legal remedy to address stay violations exists under section 362(k)(1), which provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate

circumstances, may recover punitive damages."[49]  Wells Fargo argues that the Court has already

imposed an adequate legal remedy because Debtor has been reimbursed for his actual damages, *i.e.*

his attorney fees.   "Punitive damages may be recovered when the creditor acts with actual

knowledge of the violation or with reckless disregard of the protected right."[50]  It has also been held

that "where an arrogant defiance of federal law is demonstrated, punitive damages are

appropriate."[51]  Either standard justifies the assessment of punitive damages in this case.[52]  Due to

the prevalence and seriousness of Wells Fargo's actions, punitive damages are warranted.

### B.  Ratio Between Punitive Damages and Actual Harm

"[E]xemplary damages must bear a 'reasonable relationship' to compensatory damages."[53]

"[T]he proper inquiry 'whether there is a reasonable relationship between the punitive damages

award and *the harm likely to result* from the defendant's conduct as well as the harm that actually

has occurred.'"[54]  The Supreme Court has stated that it "cannot, draw a mathematical bright line

---

[49] *See also In re Fisher*, 144 B.R. 237, n.1 (Bankr. D.RI 1992) (noting that the compensatory and punitive damages provided for a willful stay violation under section 362 is a legal remedy).

[50] *In re Dynamic Tours & Transportation, Inc.*, 359 B.R. 336, 343 (Bankr. M.D.Fla. 2006) (citation omitted).

[51] *Id.* at 344.

[52]  Further, the District Court found that "[t]he Bankruptcy Court clearly had the authority to impose punitive damages against Wells Fargo pursuant to Section 362 because the Bankruptcy Court determined that Wells Fargo's conduct was egregious."

[53] *Id.* at 1601.

[54] *Id.* at 1602 (quoting *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 453, 113 S.Ct. 2711, 2717-2718 (1993) (emphasis in original)).  In *TXO*, the Supreme Court compared the punitive damage award and the damages that would have ensued had the offending party succeeded.

17

between the constitutionally acceptable and the constitutionally unacceptable that would fit every case."[55]  Instead, punitive damages must address both "reasonableness" and "adequate guidance" concerns to satisfy the Fourteenth Amendment's due process clause.[56]

In *Eichenseer v. Reserve Life Insurance Co.*,[57] the Fifth Circuit awarded $1,000.00 in compensatory damages and $500,000.00 in punitive damages for wrongful denial of an insurance claim.  Specifically, the Fifth Circuit found that the insurance company acted with "reckless disregard ... for the rights of the insured," and that "[i]ts actions were far more offensive than mere incompetent record keeping or clerical error."[58]  The Fifth Circuit also considered that this was not the first instance which a court assessed punitive damages against the insurance company, and if the previous award did not deter sanctionable conduct, a larger award was necessary.[59]

Norwest Mortgage, Inc., n/k/a Wells Fargo, was assessed $2,000,000 in exemplary damages in *Slick v. Norwest Mortgage, Inc.*[60] for charging postpetition attorneys fees to debtors' accounts without disclosing the fees to anyone.[61]  Four years after the ruling in *Slick*, Jones found that Wells Fargo continued to charge undisclosed postpetition fees despite that multi-million dollar damage assessment.  Following *Jones*, Wells Fargo was involved in at least two (2) additional challenges

---

[55] *Haslip*, 111 S.Ct. at 1043.

[56] *Id.*

[57] *Eichenseer*, 934 at 1381.

[58] *Id*. at 1382-1383.

[59] *Id*. at 1384.

[60] *Slick v. Norwest Mortgage, Inc.*, 2002 Bankr.Lexis 772 (Bankr.S.D.Ala. 2002).

[61] *Id.* at 32.

18

to the calculation of its claims *in this Court*.  In both cases the evidence revealed that Wells Fargo continued to improperly amortize loans by employing the same practices prohibited by *Jones*. [62] In short, Wells Fargo has shown no inclination to change its conduct.

When necessary to deter reprehensible conduct, courts often award punitive damages in an amount multiple times greater than actual damages.  In *Haslip*, the Supreme Court upheld as reasonable punitive damages that were more than four (4) times the amount of compensatory damages and two hundred (200) times the amount of out-of-pocket expenses when the trial court found that the conduct was serious and deterrence was important.[63]  The Supreme Court found, "While the monetary comparisons are wide and, indeed, may be close to the line, the award [] did not lack objective criteria."[64]

The Supreme Court found it proper for the underlying court to examine as a factor in determining the amount of punitive damages, the "financial position" of the defendant.[65]  Wells Fargo is the second largest loan servicer in the United States.  With over 7.7 million loans under its administration at the time this matter went to trial, it possesses significant resources.  Previous sanctions in *Slick, Stewart, Fitch* and even this case have not deterred Wells Fargo.  As recognized in *Eichenseer*, if previous awards do not deter sanctionable conduct, larger awards may be necessary.

---

[62] *In re Stewart*, 391 B.R. 327 (Bankr. E.D.La. 2008); *In re Fitch*, 390 B.R. 834 (Bankr. E.D.La. 2008).

[63] *Haslip*, 111 S.Ct. at 1046.

[64] *Id.*

[65] *Id.* at 1045.

### C.   Comparison of Punitive Damages and Civil or Criminal Penalties

Fairness requires that a person receive "fair notice not only of the conduct that will subject him to punishment, but also the severity of the penalty."[66]  In determining the appropriate punitive damage amount, "substantial deference" must be given to "legislative judgments concerning appropriate sanctions for the conduct at issue."[67]  Other courts have recognized that this comparison may be difficult in bankruptcy cases:

> Obviously, this latter guidepost poses something of a problem as there is not a complex statutory scheme designed to respond to violations of the automatic stay other than the Bankruptcy Code itself.  Significantly, § 362(h)[68] specifically provides for the award of punitive damages.  Thus, creditors must be presumed to be on notice that if they violate the automatic stay they will be liable for punitive damages.[69]

As previously set forth, Wells Fargo is a sophisticated lender and a regular participant in bankruptcy proceedings throughout the country.  It is represented by able counsel and it well versed in the Bankruptcy Code and the provisions of the automatic stay.  Wells Fargo was on notice by the language of section 362(k) that it could be subject to punitive damages, and it was on notice through jurisprudence that those damages could be severe.

## VI.  Conclusion

Wells Fargo's actions were not only highly reprehensible, but its subsequent reaction on their exposure has been less than satisfactory.  There is a strong societal interest in preventing such future

---

[66] *BMW*, 116 S.Ct. at 1598.

[67] *Id.* at 1603.

[68]  This provision is now section 362(k).

[69] *In re Johnson*, 2007 WL 2274715, *15 (Bankr.N.D.Ala. 2007) (quoting *In re Ocasio*, 272 B.R. 815, 826 (1st Cir.BAP 2002).

conduct through a punitive award.  The total monetary judgment to date is $24,441.65, plus legal

interest,$166,873.00 in legal fees and  $3,951.96 in costs. Other fees and costs incurred by Jones

through the first remand were also incurred and are not included in the foregoing amounts.  Because

the Court cannot reveal the sealed amount stipulated to by the parties when they settled Jones'

Application for Award of Fees and Costs Related to Remand ("Application"),[70] the Court will use

Jones' Application itself as evidence of fees and costs actually incurred up to the date of the

Application.    The Application and supporting documentation establish that an additional

$118,251.93 in attorneys' fees and $3,596.95 in costs was also incurred by Jones.[71]  The amounts

previously awarded plus the additional amounts incurred establish that the cost to litigate the

compensatory portion of this award was $292,673.84.  After considering the compensatory damages

of $24,441.65 awarded in this case, along with the litigation costs of $292,673.84; awards against

Wells Fargo in other cases for the same behavior which did not deter its conduct; and the previous

judgments in this case none of which deterred its actions; the Court finds that a punitive damage

award of $3,171,154.00 is warranted to deter Wells Fargo from similar conduct in the future.  This

Court hopes that the relief granted will finally motivate Wells Fargo to rectify its practices and

comply with the terms of court orders, plans and the automatic stay.

New Orleans, Louisiana, April 5, 2012.

Hon. Elizabeth W. Magner

U.S. Bankruptcy Judge

---

[70] Docket no. 396.

[71] Evidence of the fees and costs incurred is attached to the Application.

21